Attachment A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED

DEC 03 2019

U.S. DISTRICT COURT-WVND
MARTINSBURG, WV 25401

Troy Worsley

*Your full name*

**FEDERAL CIVIL RIGHTS COMPLAINT**
**(*BIVENS* ACTION)**

v.

Civil Action No.: 1:19cv213
*(To be assigned by the Clerk of Court)*

Eddie Anderson

Alicia Wilson

Klech, Aloi, Williams

Both in their individual capacity

*Enter above the full name of defendant(s) in this action*

## I.  JURISDICTION

This is a civil action brought pursuant to **Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)**. The Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§ 1331 and 2201.

## II.  PARTIES

*In Item A below, place your full name, inmate number, place of detention, and complete mailing address in the space provided.*

    A.    Name of Plaintiff: Troy Worsley    Inmate No.: 03302-007
                Address: FCI Gilmer PO Box 6000 Glenville, WV 26351

*In Item B below, place the full name of each defendant, his or her official position, place of employment, and address in the space provided.*

**Attachment A**

B.  Name of Defendant: Eddie Anderson
    Position: Staff Physician
    Place of Employment: FCI Gilmer
    Address: 201 FCI Lane Glenville, WV 26351

    Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?   ☒ Yes   ☐ No

    If your answer is "YES," briefly explain: FCI Gilmer employee


B.1  Name of Defendant: Alicia Wilson
    Position: Physicians Assistant
    Place of Employment: FCI Gilmer
    Address: 201 FCI Lane Glenville, WV 26351

    Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?   ☒ Yes   ☐ No

    If your answer is "YES," briefly explain: FCI Gilmer employee


B.2  Name of Defendant: N/A
    Position:
    Place of Employment:
    Address:

    Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?   ☐ Yes   ☐ No

**Attachment A**

If your answer is "YES," briefly explain: _____

_____
_____
_____
_____

B.3   Name of Defendant: _____N|A_____
      Position: _____
      Place of Employment: _____
      Address: _____
      _____

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?   ☐ Yes    ☐ No

If your answer is "YES," briefly explain: _____

_____
_____
_____
_____

B.4   Name of Defendant: _____N|A_____
      Position: _____
      Place of Employment: _____
      Address: _____
      _____

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?   ☐ Yes    ☐ No

If your answer is "YES," briefly explain: _____

_____
_____
_____
_____

**Attachment A**

B.5   Name of Defendant: _____N/A_____
      Position: _____
      Place of Employment: _____
      Address: _____
      _____

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?   ☐ Yes   ☐ No

If your answer is "YES," briefly explain: _____
_____
_____
_____

## III.   PLACE OF PRESENT CONFINEMENT

Name of Prison/ Institution: __FCI Gilmer__

  A.   Is this where the events concerning your complaint took place?
      ☒ Yes   ☐ No

      If you answered "NO," where did the events occur?
      _____

  B.   Is there a prisoner grievance procedure in the institution where the events occurred?   ☒ Yes   ☐ No

  C.   Did you file a grievance concerning the facts relating to this complaint in the prisoner grievance procedure?
      ☒ Yes   ☐ No

  D.   If your answer is "NO," explain why not: _____
_____
_____

  E.   If your answer is "YES," identify the administrative grievance procedure number(s) in which the claims raised in this complaint were addressed

**Attachment A**

and state the result at level one, level two, and level three. **ATTACH GRIEVANCES AND RESPONSES:**

LEVEL 1 __974463-A1_____

LEVEL 2 __974463-F1_____

LEVEL 3 __No response_____

IV. PREVIOUS LAWSUITS AND ADMINISTRATIVE REMEDIES

    A. Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?  ☐ Yes  ☒ No

    B. If your answer is "YES", describe each lawsuit in the space below. If there is more than one lawsuit, describe additional lawsuits using the same format on a separate piece of paper which you should attach and label: "IV PREVIOUS LAWSUITS"

        1. Parties to this previous lawsuit:

            Plaintiff(s):_____

            Defendant(s):_____

        2. Court: _____
            *(If federal court, name the district; if state court, name the county)*

        3. Case Number:_____

        4. Basic Claim Made/Issues Raised: _____
_____
_____
_____

        5. Name of Judge(s) to whom case was assigned:
_____

        6. Disposition: _____
            *(For example, was the case dismissed? Appealed? Pending?)*

        7. Approximate date of filing lawsuit:_____

**Attachment A**

8. Approximate date of disposition. Attach Copies:_____

C. Did you seek informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part B?
☐ Yes    ☐ No

D. If your answer is "YES," briefly describe how relief was sought and the result. If your answer is "NO," explain why administrative relief was not sought.

_____
_____
_____
_____

E. Did you exhaust available administrative remedies?
☒ Yes    ☐ No

F. If your answer is "YES,", briefly explain the steps taken and attach proof of exhaustion. If your answer is "NO," briefly explain why administrative remedies were not exhausted.
BP-8, 9, 10, and 11 filed.
_____
_____
_____

G. If you are requesting to proceed in this action *in forma pauperis* under 28 U.S.C. § 1915, list each civil action or appeal you filed in any court of the United States while you were incarcerated or detained in any facility that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. Describe each civil action or appeal. If there is more than one civil action or appeal, describe the additional civil actions or appeals using the same format on a separate sheet of paper which you should attach and label "G. PREVIOUSLY DISMISSED ACTIONS OR APPEALS"

1. Parties to previous lawsuit:

   N/A

Attachment A

        Plaintiff(s): _____

        Defendant(s): _____

2.    Name and location of court and case number:

      _____
      _____
      _____

3.    Grounds for dismissal: ☐ frivolous   ☐ malicious
      ☐ failure to state a claim upon which relief may be granted

4.    Approximate date of filing lawsuit: _____

5.    Approximate date of disposition: _____

V.    **STATEMENT OF CLAIM**

*State here, as* **BRIEFLY** *as possible, the facts of your case. Describe what each defendant did to violate your constitutional rights.* **You must include allegations of specific wrongful conduct as to EACH and EVERY defendant in the complaint.** *Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, you must number and set forth each claim in a separate paragraph.* **UNRELATED CLAIMS MUST BE RAISED IN SEPARATE COMPLAINTS WITH ADDITIONAL FILING FEES. NO MORE THAN FIVE (5) TYPED OR TEN (10) NEATLY PRINTED PAGES MAY BE ATTACHED TO THIS COMPLAINT. (LR PL 3.4.4)**

CLAIM 1: Violation of Eighth Amendment (All Defs.). Pursuant to the Eighth Amendment of the U.S. Constitution, Worsley has a guaranteed right to be free from cruel and unusual punishment. Defs., as the responsible parties tasked to provide adequate medical care to Worsley, were aware of his Eigth Amendment right. (cont'd on attached).

Supporting Facts: 1. On April 10, 2018, while incarcerated at FCI Raybrook

Worsley was bench pressing a moderate amount of weight when he heard and felt a pop in his left pectoral area. He immediately felt pain and informed the Recreation Officer that he was injured. The Officer sent him to the prison Health Services Unit. (Cont'd on attached)

CLAIM 2: N/A

Supporting Facts: N/A

CLAIM 3: N/A

Supporting Facts: N/A

CLAIM 4: N/A

Supporting Facts: N/A

**Attachment A**

CLAIM 5: _N/A_

Supporting Facts: _N/A_

## VI. INJURY

Describe **BRIEFLY and SPECIFICALLY** how you have been injured and the exact nature of your damages.

Defendants conduct has caused Worsley to endure tremendous pain and suffering that has prolonged over an extraordinary length of time. The failure to provide adequate medical care has caused Worsley to incur physical and mental harm.

## VII. RELIEF

State **BRIEFLY and EXACTLY** what you want the Court to do for you. *Make no legal arguments. Cite no cases or statutes.*

Worsley requests that judgment be entered against Defendants, jointly and severally, and the Court grant the following relief:
(a) An order and judgment declaring:
1) Defendant Anderson violated Worsley's Eighth Amendment right (Cont'd on attached)

**Attachment A**

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and accurate. Title 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at  Glenville, WV  on  11/15/19 .
              (Location)              (Date)

                                                  Troy Worsley
                                                  Your Signature

Page 13 cont'd (Claim 1): Worsley's injury is obvious. A visual inspection of his torso shows his breast is deformed and the muscle is hanging unattached. Aware of his serious medical condition, Defendants have conciously disregarded Worsley's constant and prolonged complaints of pain and suffering. Although Defendants have recognized the need for specific diagnostic testing and exmaination by a medical specialist, they have failed to provide the adequate care constitutionally guaranteed to Worsley. Defendants intentional delay of over 18 months and obstruction of Worsley's treatment has caused him extreme pain and exacerbated his condition. Thus, Defendants caused Worsley to suffer unnecessary pain and suffering that was not part of, nor contemplated by his sentence imposed by the District of Columbia Superior Court.

Page 15 cont'd (Relief): Worsley requests that judgment be entered against Defendants, jointly and severally, and the Court to grant the following relief:

   (a) An order and judgment declaring:

      1) Defendant Anderson violated Worsley's Eighth Amendment right to be free from cruel and unusual punishment;

      2) Defendant Wilson violated Worsley's Eighth Amendment right to be free from cruel and unusual punishment;

   (b) An order and judgment declaring the actions of Defendants has harmed Worsley;

   (c) Nominal damages; and

   (d) Any other relief as may be just and proper.

   WHEREFORE, Worsley requests a trial by jury in this action.

A. Worsley Is Injured and Remains Untreated

1. On April 10, 2018, while incarcerated at FCI Raybrook, Worsley was bench pressing a moderate amount of weight when he heard and felt a pop in his left pectoral area. He immediately felt pain and informed the Recreation Officer that he was injured. TheOfficer sent him to the prison Health Services Unit (HSU).

2. Upon arrival at the Raybrook HSU, Worsley was seen by EMT J. Foster who briefly performed a topical examination of Worsley's left pectoral area. She stated the area was bruised and "there is nothing that can be done". She instructed him to "rest and ice"[1] his shoulder. Worsley stated his pain level was a 6 out of 10.

3. The next day, Worsley's chest turned purple and blue and remained significantly swollen and painful.

4. The following day, Worsley returned to HSU and was seen by a Mid-Level Provider (Nurse Practitioner K. Sorrell). A more thorough physical examination of his injured area took place. Worsley advised that his pain was an 8 out of 10 and his left ear drum felt "shattered". In the Health Services Clinical Encounter Notes, Sorrell noted that Worsley "appears in pain" and assessed the injury as "muscle /fascia/tendon at shoulder/upper arm". Sorrell instructed Worsley to continue the ice and start ibuprofen. Sorrell noted "swelling, ecchymosis" required an X-ray to "evaluate for pssible proximal bicep tendon/tear/rupture".

5. That same day, an X-ray was taken of the afflicted area. Although the X-ray did not produce any abnormality, upon information and belief, an X-ray could not produce results indicative of a muscular/tendon tear.

---

[1] As a federal inmate, Worsley is unable to procure any device to properly hold ice that can be applied to his injured area. Inmates are prohibited from possessing plastic trash bags, which are considered contraband and would subject Worsley to a disciplinary action.

1

6. Two days later, Worsley returned to HSU and was seen by RN Michael Peck. Worsley stated his pain was a 6 out of 10. Peck noted that Worsley "continued to have pain in his left upper extremity".

7. On April 18, 2018, Worsley returned to the HSU and was seen by Sorrell. She noted that Worsley was "following conservative treatment as ordered". He indicated his pain was a 5 out of 10 and stated "it feels a lot better, I'm moving it better". Sorrell instructed him to continue the ibuprofen. Sorrell expressly told Worsley that if he stopped working out, his chest would return to normal and full function within 8-9 months.

8. As a result of Sorrell's explicit advisement that Worsley would need to rest his injury for 8-9 months, he did not return to HSU seeking treatment for the pain he constantly endured.

9. After ten months of maintaining the conservative management proscribed by the HSU staff, Worsley returned to the HSU on February 19, 2019. The Clinical Encounter Notes show he informed Sorrell that he was "having severe pain in [his] chest and pain in [his] kidney for over ten months". He further stated that the pain is "sharp" in his pectoral muscle. Sorrell noted the pain was from Worsley's "pectoral muscle he injured last April". **Ten months after his injury, his pain was an 8 out of 10.**

10. Sorrell's treatment notes indicate Worsley stated: "some days I don't have the same amount of strength in my arm". Sorrell noted that "there is a deformity at the auxiliary fold. Left breast appears pendulous when he leans forward". Sorrell instructed Worsley to continue ibuprofen for pain, ice/heat for comfort.[2]

11. Worsley once again sought treatment from the HSU one week later. Sorrell noted: "patient requires further orthopedic evaluation. <u>There is no Orthopedist at or near RBK</u> [Raybrook FCI]". (all emphasis herein added)

---

2   Similar to the issue of inaccessibility to ice applicators, federal inmates lack any opportunity to possess proper heat application devices.

2

12. Worsley was transferred to FCI Gilmer, which is a higher care level facility.

13. Upon information and belief, Worsley was transferred from Raybrook to Gilmer because of the lack of available medical care for his injury. As further detailed below, the response from the Raybrook Warden to Worsley's administrative remedy request stated: "[the reason for your transfer is] to be evaluated by an orthopedist for your left chest muscle". This is contrary to the inappropriate comment by FCI Gilmer's then Health Services Administrator—Michael Weaver, who claimed: "Raybrook shipped you because you were getting diesel therapy because you complain too much".[3]

14. As a result of the transfer, Worsley spent several months in Oklahoma. Oddly, the Federal Bureau of Prisons sent Worsley over 1,500 miles to the west just to return him another 1,500 miles to the east to arrive at Gilmer.

15. In the FBOP transfer report, dated May 21, 2019, Worsley's muscle injury is noted as current. In the comments section of the report, it states: "**inmate offers constant complaint of left shoulder pain**".

16. Upon arrival at FCI Gilmer in July 2019, Registered Nurse B. Harlow performed Worsley's mandatory intake screening interview. As part of her initial medical review, she reviewed and signed Worsley's transfer report which identified his pain and length of time from his injury.

17. Harlow noted during the interview that Worsley's "current painful condition [was a] tore pectoral muscle 2018". Nurse Harlow expressly identified Worsley's "current painful condition" as a "potential item for follow-up". The intake report was requested to be co-signed by and sent to the prison physician—Eddie Anderson, DO.

18. On July 18, 2019 (15 months after the intitial injury), Worsley sent an email to the Gilmer HSU:

---

3   Diesel Therapy is a descriptive accusatory term used to define the unnecesary transfers that are common amongst FBOP inmates.

3

> I have a chest injury that is above my heart. I have
> been waiting for a long time to get to this prison to see
> an orthopedist. **I'm in severe pain** and I just want to know
> how long I have to wait to see the orthopedist. Can you
> please help me, **my chest hurts bad, its hard to sleep,
> its hard to do anything.** Thank you.

(original formatting omitted).

19. On July 19, 2019, Physicians Assistant Alicia Wilson responded to the email: "you may address this during your A&O visit next week".[4]

20. Worsley then attended sick-call at Gilmer's HSU. He presented complaints of pain, the Clinical Encounter Notes show he stated: "my left chest is massively swollen above my heart. <u>I'm in severe pain</u>, I can't sleep, my chest is burning". Worsley indicated his pain was an 8 out of 10, describing it as "sharp".

21. Worsley was seen by EMT Jon Bremar, who indicated in the Clinical Encounter Notes that Worsley's injury was over one-year old and the pain has lasted for over one year.

22. During the Bremar examination, he stated: "I can see there is something wrong with you". Bremar took Worsley to Dr. Eddie Anderson's office and asked Dr. Anderson to "take a look at his chest". Dr. Anderson, who had cosigned the July 16th intake report which clearly indicated Worsley's pectoral muscle was torn and should be followed up on, arbitrarily stated: "the chest muscle is deformed—nothing can be done". Bremar's examination concluded with a "New Consultation Request" added to Worsley's medical record—an "MRI for possible pectoral tear" was added with a scheduled target date of July 19, 2019. The request was sent to Anderson for review and to be co-signed.

23. As part of the A&O screening, Worsley was seen by Dr. Anderson. Anderson noted Worsley's medical record:

> Complaint: upper extremity pain
> See EMTP [Bremar] note: > 1 year since injury, LEFT chest pain, trouble lifting arm, wants to get MRI.

---

4  Admission and Orientation is a mandatory process for all recently arrived inmates. It involves seeing an inmate's designated medical provider for an initial screening.

4

24. Dr. Anderson added a New Consultation Request as "Orthopedist Evaluation target date 9/19/19 for LEFT arm/shoulder pain; distant injury weight lifting, **now with persistent pain** and weakness...possible pectoralis soft tissue defect."

25. Worsley then sent another email to HSU:

> I have a ruptured tendon in my left arm. I was transferred here to receive an MRI, how long will it be before I receive one. **I'm in a lot of pain**. Please help me, **I've been in pain for a long time**. Please help me. (original formatting omitted)

26. One week later, Worsley sent another email to HSU asking if he had been scheduled for an MRI, PA Wilson responded: "Not yet".

27. On July 24, 2019, Worsley was seen by PA Wilson for a routine physical examination. Wilson indicated in his medical record that his current painful condition was his left chest. She noted that Worsley's "left breast was considerably larger than the right. Is soft, not firm like right side. **Pain** with movement of left shoulder...decreased ROM left shoulder in all directions." She noted his statement: "they made me a care level 2 so I could come here and get an MRI". Even though Worsley had been on a conservative treatment plan for over 15 months, Wilson ordered another X-ray of the afflicted area.

28. Wilson noted: "MRI scheduled on 7/19/19" but further noted:

> MRI request during sick call. Criteria not met. Will D/C and resubmit after criteria met. Ok to consider ortho appt. But will probably benefit from MRI prior...Add to HTN and ORTHO.

29. Although this was noted in Worsley's file, none of this information was communicated to him.

30. On August 6, 2019, Worsley went to HSU during sick-call.[5] He was seen by EMT J. Houchin. She noted:

---

5  The FBOP allows inmates to address medical complaints with HSU staff, they use a triage process, known as "sick-call". HSU staff evaluate the issue and classify the inmate based on the priority of need for treatment.

>       Complaints of left pectoral **pain;** believes the muscle
>       to be separated. States injured during workout prior
>       to arrival at this facility.

31. During the Houchin evaluation, Worsley stated his pain was a 6 out of 10. Houchin requested the exam notes be reviewed and co-signed by Wilson.

32. Weeks later, Worlsey sent another email to HSU:

>       Hey Mrs. Wilson, the MRI truck came today, I didn't get
>       called. Does this mean my request for my MRI has been denied?
>       Because Mrs. Wilson, **I'm in a lot of pain,** I keep putting
>       sick calls in...I'm taking ibuprofen for the pain from
>       commissary, the ibuprofen is not doing anything for the pain,
>       what do I do? (original formatting omitted)

33. Wilson responded two days later:

>       I stopped the MRI because you didn't meet criteria.
>       I tried to send you to Ortho, that was denied. We will
>       f/u next week at chronic care.6

34. On August 28, 2019, Worsley emailed Dr. Anderson:

>       **I'm in severe pain,** I keep telling you all every morning
>       I wake up, I feel like my left side of my body has been hit
>       by a car. **I'm hurt very badly** and I still have not even had
>       an MRI, what do I have to do? I have made sick call, I have
>       bought ibuprofen, I have done everything you have asked and
>       still I have not had the proper medical treatment. What do
>       I do??? (original formatting omitted)

35. No response from Dr. Anderson was received.

36. On September 1, 2019, Worsley sent another email to HSU:

>       They had a MRI review on the 29th of August, did it
>       get denied again?

---

6   Chronic Care is a method the FBOP uses to manage inmates health care. Inmates enrolled in the program are seen by staff physicians on a regular basis. Inmates are supposed to be evaluated constantly and their medical plans updated based on their progress or needs.

6

37. On September 3, 2019, Wilson responded via email:

> It was sent to the Region for review...it hasn't been approved or denied yet.

38. As of the date of the Sept. 3rd email, 18 months had gone by sinceWorsley's initial injury.

### B. Administrative Remedy History

39. Worsley filed his informal request (BP-8) on March 28, 2019. One week later, his request was denied.

40. He filed a BP-9 on April 9, 2019. One week later, it was denied but notably, the response from the facility Warden stated:

> Your [medical] provider made you a care level 2...this is a non-emergent transfer to be evaluated by an orthopedist for your left chest muscle.

41. Worsley filed his BP-10 on April 30, 2019. No response was received from the FBOP Regional Counsel.

42. He filed his BP-11 on August 8, 2019, it was denied on August 28, 2019.

43. On October 25, 2019, Worsley filed a Form 95 pursuant to the Federal Tort Claims Act. A Statement of Claim pursuant to W. Va. Code § 55-7B-6 will be filed accordingly.