IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TROY WORSLEY,

   Plaintiff,

v.             Civil Action No. 1:19cv213
              (Judge Kleeh)


EDDIE ANDERSON and ALICIA
WILSON,

   Defendants.

## REPORT AND RECOMMENDATION

### I. Background

  The *pro se* Plaintiff, an inmate at FCI Gilmer in Glenville, West Virginia, filed the above-styled Bivens[1] civil right action on December 3, 2019.  Plaintiff was granted permission to proceed *in forma pauperis* and has paid his initial partial filing fee. ECF Nos. 2, 12. Plaintiff's motion to exceed the page limits was granted on December 4, 2019. ECF Nos. 5, 8. On February 24, 2020, Plaintiff filed a combined motion for leave to supplement the complaint and for a preliminary injunction. ECF No. 15. By Order entered March 4, 2020, Plaintiff's motion to supplement was granted and his motion for preliminary injunctive relief[2] was denied without prejudice as premature. ECF No. 16. That same day, an Order notifying Plaintiff of the potential consequences of pursuing both Bivens and Federal Tort Claim Act ("FTCA") actions was entered; a Notification was attached for Plaintiff to complete and return, indicating his intent regarding the same. ECF No. 17. On March 20, 2020, without using the Notification provided, Plaintiff sent a letter to the

---

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[2] Plaintiff requested that the Court direct that an MRI be performed of his injured pectoral muscle, noting that an MRI had been performed on January 23, 2020, but that it was done on the wrong area.

undersigned, reiterating his request for an MRI; requesting relief pursuant to Fed.R.Civ.P. 59(e) or 60; and advising that at the present time, he intended to pursue only the Bivens action. ECF No. 20. On March 20, 2020, Plaintiff filed a letter motion requesting to renew his motion for preliminary injunctive relief. ECF No. 22. A Report and Recommendation was entered on March 30, 2020, recommending that Plaintiff's renewed motion for preliminary injunctive relief be denied. ECF No. 24.

On March 26, 2020, the Defendants were directed to answer the complaint, and to attach copies of any/all MRI reports to their response. ECF No. 21. On May 29, 2020, Defendants moved for a consolidated response date; by Order entered June 1, 2020, the motion was granted. ECF Nos. 34, 35. The Defendants' filed a dispositive motion on June 15, 2020, along with a memorandum in support and motion to seal with exhibits. ECF No. 37. On June 15, 2020, a Roseboro Notice issued. ECF No. 39. On August 24, 2020, Plaintiff filed duplicate Federal Tort Claim Act ("FTCA") complaints [ECF No. 47, 50], duplicate responses in opposition [ECF Nos. 46, 49], and duplicate Motion(s) for Leave to file an amended Bivens complaint. ECF Nos. 45, 48. Plaintiff also filed a Motion for Equitable Relief. ECF No. 51.  By Order entered September 1, 2020, the Defendants' motion to seal was granted and the exhibits were sealed. ECF Nos. 52, 53. By separate Orders entered October 28, 2020, the Defendants were directed to file a response to Plaintiff's Motion(s) to Amend and to Plaintiff's Motion for Equitable Relief. ECF Nos. 56, 57.  On November 18, 2020, Defendants filed their response to Plaintiff's Motion(s) to Amend. ECF No. 60. By Order entered December 17, 2020, the Clerk was directed to redocket the statement included with Plaintiff's duplicate motions to amend as an attachment to the FTCA complaint(s). ECF No. 61.

## II. Contentions of the Parties

### A. The Bivens Complaint

In his complaint, Plaintiff raises Eighth Amendment claims of deliberate indifference to serious medical needs against Defendants, each of whom are health services staff at FCI Gilmer, arising out treatment he received there for an April 10, 2018 injury originally incurred when Plaintiff was lifting weights at FCI Ray Brook in New York, when he felt a "pop" in his left pectoral area.  ECF No. 1 at 7 – 8. Plaintiff alleges that FCI Ray Brook health services denied him any real care beyond an x-ray, ibuprofen, and instructions to apply ice or heat and rest, despite his having pain at a level of "6" on a scale of 1 – 10, an obvious chest wall deformity, and loss of strength in his left arm. Id. at 12 – 14. Plaintiff contends that after 10 months of conservative treatment, his pain was an "8" out of "10," and he was told he needed an orthopedic consult but that there was no orthopedist near FCI Raybrook. Id. at 13.

Plaintiff was transferred from FCI Ray Brook to FCI Gilmer in July, 2019, complaining of constant left shoulder pain from his torn pectoral muscle, and decreased range of motion of the left shoulder in all directions. Id. at 14 – 16. An MRI was finally ordered in mid-July, 2019, then cancelled because Plaintiff did not "meet criteria." Id. at 16 – 17. The MRI was again requested in late August or September, 2019, but had not yet been approved by the time Plaintiff filed his complaint. Id. at 17 – 18.

Plaintiff avers that he filed a Form 95 Administrative Claim Form on October 25, 2019. Id. at 18.

In a February 24, 2020 supplement to his complaint, Plaintiff advised that the MRI was finally scheduled for November 12, 2019, but was then cancelled; it was finally performed on January 23, 2020, but apparently on the wrong part of his body, failing to reveal the injured area. ECF No. 1-3 at 2.

Plaintiff avers that he has exhausted his administrative remedies. ECF No. 1 at 5 – 6, 18.

3

Plaintiff contends that he has been in great pain for over 18 months, has suffered physical and mental harm. As relief, he requests "nominal damages," a jury trial, and injunctive relief in the form of an order and judgment against defendants "jointly and severally," declaring that they violated his Eighth Amendment rights and harmed him. ECF No. 1 at 11.

B. **Defendant's Motion to Dismiss or in the Alternative, Motion for Summary Judgment**

Defendants argue that the complaint should be dismissed or summary judgment be granted in their favor because:

1) Plaintiff failed to exhaust his administrative remedies before filing suit. ECF No. 37-1 at 7 - 9.

2) Plaintiff's allegations are not cognizable under Bivens because they present a new context where the Supreme Court has not authorized Bivens liability. Id. at 9 - 17.

3) Plaintiff's claims do not rise to the level of Eighth Amendment violations. Id. at 18 – 23.

4) Even if Plaintiff could pursue his Bivens claims, Defendants are entitled to qualified immunity. Id. at 23 – 24.

Attached to Defendants' response are sworn declarations from Defendant Anderson; a copy of Plaintiff's Inmate History; copies of certain medical records; a copy of BOP Program Statement ("P.S.") 6031.04, Patient Care; a copy of a sworn declaration from Defendant Wilson; a copy of a sworn declaration from Destiny Spearen, Paralegal for the BOP at the Consolidated Legal Center in Beckley, West Virginia ("Spearen Decl."); and a copy of Plaintiff's Administrative Remedy Generalized Retrieval Full Screen Format. See ECF Nos. 37-2 through 37-9; see also copies of additional sealed medical records. ECF No. 53.

E. **Plaintiff's Response in Opposition**

Plaintiff reiterates his arguments and attempts to refute the Defendants' on the same. He contends that he did exhaust his administrative remedy and argues that the declaration submitted

by D. Spearen is not evidence to show that he ever received a response to his BP-10, and that he did not in fact receive one, and after waiting a "sufficient time," he filed the final remedy. ECF No. 46 at 4. He contends that because the defendants challenge his request from damages, in his proposed amended complaint, instead of damages, he requests injunctive relief. Id. at 4 – 5.

## F. Plaintiff's Duplicate Motions to Amend

Plaintiff's motion(s) to amend attach a two-page typewritten document titled "First Amended Complaint," which seeks to amend § V, Claim 1 of his Bivens complaint to add a new defendant, "K. Sorrell," who Plaintiff alleges is a citizen of the state of New York and a Bureau of Prisons ("BOP") employee at FCI Ray Brook, in Ray Brook, New York. ECF No. 45-1 at 1. Plaintiff contends that Sorrell failed to provide him with adequate medical care for over ten months while he was at FCI Ray Brook, constituting deliberate indifference to Plaintiff's medical needs. Id. Further, he seeks to add a statement to § VI, Claim 2, Injury: "Sorrell's conduct irreparably damaged Worsley and caused him to sustain tremendous pain and suffering . . . " Id. Plaintiff also seeks to amend § VII of his Bivens complaint, "Relief," to add a request for relief: "[a]n order and judgment declaring Sorrell Violated Worsley's Eighth Amendment right to be free from cruel and unusual punishment[.]" Id. at 2.

Plaintiff also seeks to add a statement to § V, Claim 2 of his original complaint, stating that "all named defendants violated [his] . . . constitutional rights by obstructing his ability to procure medical care [id.]," and seeks to add a statement to § V, Claim 2, "Supporting Facts," noting that he "retains a guaranteed right not to be deprived from accessing needed medical care. Defendants' conduct has obstructed Worsley's right to procure necessary medical care, imposing atypical and significant hardship on him." Id. Further, Plaintiff seeks to add a statement to § VI, Claim, "Injury:" " . . . The Defendants' conduct caused Worsley to be deprived of certain liberty interests

[id.]," to amend § VII, "Relief," to add a request for relief: "[a]n order and judgment declaring, pursuant to the U.S., West Va., and New York Constitutions, Defendants' conduct violated Worley's protected liberty interest to procure necessary medical care: and enjoining "the further deprivation of Worsley's right to adequate medical care . . . and further violation of Worsley's right to due process." Id. at 2.

### G. Defendants' Response in Opposition to Plaintiff's Motion(s) to Amend

Defendants argue that Plaintiff's motion(s) to amend should be denied as futile because the proposed new defendant, "K. Sorrell," has no connection with FCI Gilmer, which is 700 miles away from FCI Ray Brook, thus, the treatment K. Sorrell provided would have been completely separate and apart from the treatment provided by Defendants, and could not be considered to be part of the same transaction or occurrence as the claims against Defendants. ECF No. 60 at 3 – 4. Defendants also argue that permitting Plaintiff to amend his complaint to add requests for injunctive relief would be futile, because he only brought suit against them in their individual capacities. Id. at 5.

### H. Plaintiff's Motion for Equitable Relief

Plaintiff moves the Court to "utilize its equitable powers and prohibit the restrictive mail conditions from being implemented at FCI Gilmer Warden Hudgins." ECF No. 51.  Plaintiff contends that in July 2020, the Warden issued a memorandum to the inmates regarding incoming mail procedures that significantly restricts inmates' ability to receive mail that uses a mailing label requiring handwritten address information; restricts mailing to no more than ten sheets of single-sided paper; and forbids the use of manila envelopes. He avers that "special mail" appears to be exempt, although he argues that "neither the Court nor the Office of the U.S. Attorney full fil the requirements for this exemption" because none of the correspondence from them has been treated

6

as "special mail" in the past. Id. Plaintiff avers that the new restrictions will also prevent him from receiving mail from opposing counsel, and that of "particular concern are the voluminous attachments expected in this matter." Id.

## I. **Defendants' Response in Opposition to Plaintiff's Motion for Equitable Relief**

Defendants contend that inquiries were made regarding the recent changes in FCI Gilmer mail policy via a November 3, 2020[2] Bulletin; the changes were enacted in response to increasing attempts to introduce contraband into the prison via the mail; the Bulletin does not make any changes to inmates' receipt of special or legal mail except to note that inmates will not receive the original envelope those mailing arrive in, but will instead receive a photocopy of the envelope. ECF No. 59 at 1. Thus, the mail policy changes should have no effect on Plaintiff's ability to receive his mail from the U.S. Attorney's Office or the Court in this matter, as all such mail is "special mail" that is not subject to the recent mail policy changes. Id. at 2. Defendants attach a copy of the November 3, 2020 Bulletin to their response. See ECF No. 59-1.

## J. **Plaintiff's FTCA Complaint**

On August 24, 2020, almost nine months after filing his Bivens complaint, Plaintiff filed duplicate copies of a FTCA complaint, alleging that the United States violated its duty of care to him under "18 U.S.C. 4001, 4042, and the rules and regulations promulgated by the FBOP." ECF No.  47 at 6. Despite his pending Bivens action, Plaintiff's FTCA denies having ever filed any other lawsuit dealing with the same facts alleged in his FTCA complaint.  Id. at 2. Plaintiff avers that he filed his Standard Form 95 asserting a claim of personal injury with the BOP on November 4, 2019, seeking One Million Dollars; received a written acknowledgement on December 9, 2019, and that the claim number assigned to the claim was TRT-MXR-2020-01708. ECF No. 4. Plaintiff alleges that from April 2018 to the present, the federal employees, "K. Sorrell," Eddie Anderson,

and Alicia Wilson, failed to provide the care needed to diagnose and treat his torn pectoralis muscle, and that their failure to do so was "unreasonable and failed to protect" him "from serious harm." Id. at 6. Plaintiff describes his injury as "tremendous pain and suffering and emotional distress." Id. at 9. As relief, he seeks a declaration that Defendant was negligent and $1,000,000.00 in damages. Id.

Plaintiff attaches a Statement Pursuant to W.Va. Code 55-7B-6(c), asserting that he believes no screening certificate of merit is necessary to support his FTCA claim, because "this action is based on a well-established legal theory of liability which does not require expert testimony support a breach of the applicable standard of care as promulgated by the FBOP." ECF No. 47-3. Plaintiff alleges that he has been harmed by the "Defendants' "negligent conduct." Id.

### III. Standard of Review

#### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs., 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual

allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id.; see also Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 (providing general rules of pleading), Fed. R. Civ. P. 9 (providing rules for pleading special matters), Fed. R. Civ. P. 10 (specifying pleading form), Fed. R. Civ. P. 11 (requiring the signing of a pleading and stating its significance) and Fed. R. Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). See Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009).

Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely

presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985). Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

However, when, as here, a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## B. Motion for Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.  <u>Celotex</u> at 323.  Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts."  <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  <u>Id.</u> This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson</u> at 256.  The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment.  <u>Id.</u> at 248.  Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  <u>Matsushita</u>, at 587 (citation omitted).

## IV. <u>Analysis</u>

### A. <u>Exhaustion of Administrative Remedies</u>

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). A <u>Bivens</u> action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available. <u>Booth</u>, at 741. Because exhaustion is a prerequisite to

---

[3] <u>Porter</u>, 534 U.S. at 524.

suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. See Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84 - 85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires full and proper exhaustion." Woodford, at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101 - 102.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, *et seq.* If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[4] An inmate is not deemed to have exhausted his

---

[4] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days . . . If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it not foreclosed from dismissing a case *sua sponte* on exhaustion grounds, if the failure to exhaust is apparent from the face of the complaint.  See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674, 681 – 82 (4th Cir. Va. 2005).

Under §1997e(a), the exhaustion requirement depends on the "availab[ility]" of administrative remedies: An inmate must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016).  For example, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use, such as when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859. Or, a remedy might be rendered unavailable because prison administrators thwart inmates from taking advantage of it "through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1860.

Finally, where exhaustion is not apparent from an inmate's pleading, "a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." Custis v. Davis, 2017 U.S. App. LEXIS 5147 (4th Cir. 2017)(quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Here, Plaintiff asserts that he filed a BP-8 on March 28, 2019 that was denied a week later. ECF No. 1 at 18. He avers that he filed a BP-9 on April 9, 2019.  One week later, it was denied.

Id. He filed a BP-10 on April 30, 2019 and did not receive a response from BOP Regional Counsel. On August 8, 2019, he filed a BP-11; it was denied August 28, 2019. Id. He did not attach copies of any of the administrative remedies to his complaint.

In their memorandum in support of their dispositive motion, Defendants assert that Plaintiff failed to exhaust his administrative remedies before filing suit. ECF No. 37-1 at 9. They aver that Plaintiff's initial administrative remedy regarding his weightlifting injury, Remedy No. 974463-F1, was filed on April 15, 2019 while Plaintiff was still at FCI Ray Brook, before he ever arrived at FCI Gilmer, challenging the medical care he received for his chest muscle injury at FCI Ray Brook; it was denied on April 17, 2019. See Spearen Decl., ECF No. 37-8, ¶ 9 at 2; see also Administrative Remedy Generalized Retrieval, ECF No. 37-9 at 7. On May 3, 2019, while still at FCI Ray Brook,[5] Plaintiff appealed to the Regional Office via Remedy No. 974463-R1; on May 31, 2019, this remedy was also denied. Spearen Decl., ECF No. 37-8, ¶ 9 at 2; see also Administrative Remedy Generalized Retrieval, ECF No. 37-9 at 8. On August 19, 2019, about a month after arriving at FCI Gilmer, Plaintiff appealed to the Central Office via Remedy No. 974463-A1; on August 28, 2019, this remedy was rejected as untimely and for failing to include a copy of the Regional Administrative Remedy Appeal. Spearen Decl., ECF No. 37-8, ¶ 9 at 2; see also Administrative Remedy Generalized Retrieval, ECF No. 37-9 at 8. Plaintiff never attempted to correct the deficiencies with his administrative remedy and resubmit it to the Central Office. See id. Moreover, Plaintiff never filed or attempted to file any administrative remedy over the health care he received while at FCI Gilmer. Spearen Decl., ECF No. 37-8, ¶ 10 at 2.

Plaintiff's response in opposition insists that he did exhaust his administrative remedies; he argues that the Spearen Declaration is not evidence to show that he ever received a response to

---

[5] Plaintiff's Inmate History, provided by Defendants, reveals that he arrived at FCI Ray Brook on March 12, 2015, and left there on May 31, 2019.  He did not arrive at FCI Gilmer until July 16, 2019. See ECF No. 37-3 at 1.

his BP-10; that he did not in fact receive one; and after waiting a sufficient time, he filed the final remedy. ECF No. 46 at 4.

Despite Plaintiff's arguments that he exhausted all of his administrative remedies, most critically for his claims in this <u>Bivens</u> action, it is apparent from even a cursory a review of the record that Plaintiff has never filed, let alone exhausted, any claim regarding the medical care he received from the Defendants at FCI Gilmer.  Plaintiff's response in opposition conspicuously fails to address this fact, except to briefly argue that Defendants provide no authority to support their position that an inmate must file grievances naming each staff member by name. ECF No. 46 at 4. Plaintiff misses the point; in order to file suit against *these* defendants, he must have exhausted his administrative remedies regarding the care *they* gave (or failed to give) him; at issue in this suit is the care Plaintiff received at FCI Gilmer, not the care he received (or did not) at FCI Ray Brook.

Further, while the medical care Plaintiff received, or did not receive at FCI Ray Brook is not at issue here, nonetheless, Plaintiff cannot even be said to have ever fully exhausted his grievances over the care he received there, either, because his Remedy No. 974463-A1 was *rejected* as untimely and for failing to include a copy of the Regional Administrative Remedy Appeal, not *denied*. Plaintiff's argument about having exhausting the appeal that grievance further overlooks the fact that the appeal from the Regional Director's May 31, 2019 denial, which Plaintiff claims to have never received, should have been filed within thirty days of May 31, 2019, or by June 30, 2019; Plaintiff's appeal was not filed until August 19, 2019, thus it was already untimely by 50 days by the time he finally filed it.[6] Rejection notices always provide specific directions as to how to correct the problem at issue;  Plaintiff simply did not follow the directions.

---

[6] If the inmate does not receive a response within the time allotted for reply . . . the inmate may consider the absence of a response to be a denial at that level.  28 C.F.R. § 542.18.

Instead of correcting his error and beginning again, Plaintiff disregarded the instruction and did not resubmit.

Thus, Plaintiff's failure to ever initiate the grievance process challenging the medical care at FCI Gilmer, and his failure follow the clear directives to correct his grievance over the care at FCI Ray Brook does not render the grievance process "unavailable," as defined by Ross, *supra*, 136 S.Ct. at 1859 – 60.

Further, a careful review of the record reveals that by June 10, 2020, the date Spearen signed her sworn Declaration, Plaintiff had filed 14 administrative remedies on various topics during his incarceration with the BOP. See ECF No. 37-8, ¶ 9 at 2. Eleven of those had been filed *before* Plaintiff ever filed his first grievance regarding the medical care at FCI Ray Brook.  See ECF No. 37-9 at 2 – 7. Therefore, by the time of his injury at FCI Ray Brook, Plaintiff was clearly already well-acquainted with the grievance process' requirement of exhaustion at each level before proceeding to the next.

"When opposing parties tell two different stories, one of which is  blatantly contradicted by the record, so that  no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." See Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686, 694 (2007). Beyond the unsupported conclusory allegations to the contrary in Plaintiff's admittedly verified complaint, further attested to in his verified response in opposition, when weighed against the sworn Spearen Declaration and the Administrative Remedy Generalized Retrieval, all contradict Plaintiff's unsupported allegations regarding his efforts at exhaustion, Worsley has  failed  to  present sufficient evidence to dispute the Defendants' claim that he failed to exhaust his administrative remedies before filing suit. Worsley's conclusory  allegations  do  not  meet  the  "heightened

pleading standard" required in actions against government officials. See Randall v. United States, 95 F.3d 339 (4th Cir. 1996); see also Dunbar Corp. v. Lindsey, 905 F.2d at 764.

Accordingly, the undersigned finds that Plaintiff makes no claim that the grievance process was rendered unavailable to him, or that the Defendants or any other prison official ever threatened him with violence to discourage him from filing grievances.  Therefore, consistent with Custis v. Davis, Plaintiff has had the opportunity to address the issue and the undersigned still finds that his failure to exhaust his Bivens claim of deliberate indifference to serious medical needs by the FCI Gilmer medical Defendants Anderson and Wilson cannot be excused, and this matter must be dismissed for failure to exhaust administrative remedies. Normally, such a dismissal would be without prejudice. However, here, because so much time has elapsed, Plaintiff cannot now do so under the BOP's administrative remedy procedure;[7] therefore, his claims should be dismissed with prejudice.  See 28 C.F.R. § 542.10, et seq.

## B. FTCA Complaint – Medical Negligence

Plaintiff's tersely-worded FTCA complaint, filed without a memorandum in support, alleges that the Defendant was negligent by failing to provide appropriate treatment for his torn pectoralis muscle from April 2018 through the present. He  attaches a Statement Pursuant to W.Va. Code 55-7B-6(c), asserting that he believes no screening certificate of merit is necessary  to support his claim, because "this action is based on a well-established legal theory of liability which does not require expert testimony support a breach of the applicable standard of care as promulgated by

---

[7] The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8).  If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9**), within 20 calendar days of the date of the occurrence on which the complaint is based**. See 28 C.F.R. § 542.10, et seq.  (emphasis added).

the FBOP." 47-3. Plaintiff alleges that he has been "irreparably harmed" by the "Defendants'
"negligent conduct." Id.

The FTCA is a comprehensive legislative scheme by which the United States has waived
its sovereign immunity to allow civil suits for actions arising out of the negligent acts of agents of
the United States. The United States cannot be sued in a tort action unless it is clear that Congress
has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite
v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of
the United States Code. 28 U.S.C. §§ 1346(b), 1402(b), 2401(b) and 2671-2680.

An inmate "can sue under the FTCA to recover damages from the United States
Government for personal injuries sustained during confinement in a federal prison, by reason of
the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). The
FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating
> to tort claims, in the same manner and to the same extent as a private individual
> under like circumstances, but shall not be liable for interest prior to judgment or
> for punitive damages.

However, the FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220,
223 (4th Cir. 2001). "The statute merely "permits the United States to be held liable in tort in the
same respect as a private person would be liable under the law of the place where the act occurred."
Id.

Here, Plaintiff alleges that the defendants' negligent acts occurred in the State of New York
and West Virginia. However, in this Court, West Virginia State law applies.

To establish a medical negligence claim in West Virginia, the plaintiff must prove:

(a) the health care provider failed to exercise that degree of care, skill, and learning
required or expected of a reasonable, prudent health care provider in the profession

or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3.

When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (W.Va. 2000).

Additionally, under West Virginia law, certain requirements generally must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

### § 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity:

 (1)The expert's familiarity with the applicable standard of care at issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W. Va. 2004); see also Starns v. United States, 923 F.3d 34 (4th Cir. 1991) (holding West Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA).

Although the general rule in medical malpractice cases in West Virginia requires expert witnesses, expert testimony is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of law jurors by resort to common knowledge and experience." Farley v. Shook, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability:"

> Notwithstanding any provision of this code, if the claimant or his or her counsel, believes that no screening certificate of merit is necessary because a cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of the screening certificate of merit.

West Virginia Code § 55-7B-6(c). In Johnson v. United States, 394 F.Supp.2d 854, 858 (S.D. W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. Id. The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis [sic] backward causing diminished bloodflow and subsequent Necrosis [sic] and infection." Id. at 858.

Unlike the facts in <u>Johnson</u>, the Plaintiff's allegations of negligence are complex and expert testimony is necessary. <u>See</u> <u>O'Neil v. United States</u>, 2008 WL 906470 (S.D. W.Va. Mar. 31, 2008) (finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Grave's disease, hyperthyroidism, congestive heart failure, and cardiomyopathy are not within the understanding of lay jurors by resort to common knowledge and experience); <u>see</u> <u>also</u> <u>Giambalvo v. United States</u>, 2012 WL 984277 *4 (N.D.W. Va. Mar. 22, 2012) (finding that <u>Johnson</u> "is a rare exception to the 'general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witness.'").

In the instant case, the undersigned finds that the Plaintiff's allegations of improper diagnosis and treatment of his torn pectoralis muscle and what constitutes timely and appropriate treatment are not within the understanding of lay jurors by resort to common knowledge and experience. Accordingly, despite Plaintiff's contentions to the contrary, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c), and his FTCA complaint should be dismissed.

## C. <u>Duplicate Motions to Amend Bivens Complaint</u>

Plaintiff's motion(s) to amend seek to add an additional defendant, K. Sorrell, an FCI Ray Brook employee and a citizen of New York, alleging that Sorrell was deliberately indifferent to his medical needs. Plaintiff also seeks to make various other changes to his <u>Bivens</u> complaint regarding Sorrell in his claim for injury and for relief. Further, he seeks to add various other amendments regarding the defendants in general, as to their alleged violations of his constitutional rights, and his requests for relief.

Fed.R.Civ.P. 15(a)(1) permits a party to amend its pleading once as a matter of course within 21 days after serving it, or, if the pleading is one to which a responsive pleading is required,

21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.  In all other cases, Fed.R.Civ.P. 15(a)(2) provides that a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires. Further, Fed.R.Civ.P. 15(c)(1)(A) provides that an amendment to a pleading relates back to the date of the original pleading when (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment.

When the above timelines have expired and the other party does not consent, a plaintiff may not amend his complaint without leave of court.  The Fourth Circuit has held that courts should deny leave to amend "only where good reason exists" to do so. Franks v. Ross, 313 F.3d 184, 189 n.15 (4th Cir. 2002). Leave to amend may be denied when the proposed amendment is futile because it is "clearly insufficient or frivolous on its face." Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986); see also Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).

Here, it would be futile to grant Plaintiff's motion to amend his Bivens complaint because the same is already being recommended for dismissal for Plaintiff's failure to exhaust his administrative remedies.  As noted supra, Plaintiff never even began the administrative process to challenge the care he received at FCI Gilmer, and he failed to complete exhausting his grievances regarding the care he received at FCI Ray Brook.  Accordingly, even if this Court did have personal

22

jurisdiction over "K. Sorrell," which it does not,[8] Plaintiff's claims against that individual would be barred for failure to exhaust as well.

Accordingly, the undersigned recommends that the Plaintiff's motion(s) to amend his Bivens complaint be denied as futile.

### D. **Motion for Equitable Relief**

The undersigned recommends that Plaintiff's motion for a directive from this Court regarding the "restrictive mail conditions" at FCI Gilmer be denied as moot. There are no changes

---

[8] In order for a court to hear a case, the court must have both subject matter jurisdiction and personal jurisdiction. For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). The West Virginia long-arm statute is contained in W.Va. Code §56-3-33(a), which provides that:

(a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and  validity as though such nonresident were personally served with a summons and complaint within this state:

(1) Transacting any business in this state;
(2) Contracting to supply services or things in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury in this state by an act or omission outside this state if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly  or impliedly made in the sale of goods outside this state: Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Having an interest in, using or possessing real property in this state; or
(7) Contracting to insure any person, property or risk located within this state at the time of contracting.
(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7), subsection (a) of this section may be asserted against him or her.

that will affect Plaintiff's receipt of his legal mail associated with this case, and Plaintiff has not alleged that he has actually suffered the same.

## V. <u>Recommendation</u>

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [ECF No. 37] be **GRANTED** and Plaintiff's <u>Bivens</u> complaint be **DENIED with prejudice for failure to exhaust.** Further, the undersigned **RECOMMENDS** that Plaintiff's pending FTCA Complaint(s) [ECF Nos. 47, 50] be **DISMISSED without prejudice for failure to comply with the MPLA.**

Further, the undersigned **RECOMMENDS** that Plaintiff's pending duplicate Motions to Amend his <u>Bivens</u> Complaint [ECF Nos. 45, 48] be **DENIED as futile,** and Plaintiff's pending Motion for Equitable Relief [ECF No. 51] be **DENIED as moot.**

The parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas S. Kleeh, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984). A copy of such objections shall be served on Judge Kleeh.

The Clerk is directed to provide a copy of this Order to the *pro se* Plaintiff by certified mail, return receipt requested, at his last known address as reflected on the docket sheet, and to transmit a copy electronically to all counsel of record.

In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: December 18, 2020

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE